UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS                                                  22-74-SDD-RLB

DARIEN L. CUMMINGS

## RULING

Before the Court is a *Motion to Suppress and Evidence*[1] filed by the Defendant, Darien L. Cummings ("Cummings"). The United States ("the Government") filed a *Response*,[2] and the Court held an evidentiary hearing.[3] Both parties complied with the Court's order to file post-hearing briefs.[4] For the reasons set forth below, Cummings' *Motion*[5] shall be GRANTED.

## I.    FACTUAL BACKGROUND

Cummings has been charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[6] He now seeks to suppress evidence related to this charge. The Court finds the following facts by a preponderance of the evidence based on the evidence presented at the *Motion to Suppress* hearing.[7]

On August 15, 2021, Louisiana State Police ("LSP") Trooper John Cannon observed a black Dodge Charger traveling 94 mph in a 55-mph construction zone on US-

---

[1] Rec. Doc. 18.
[2] Rec. Doc. 20.
[3] Rec. Doc. 30.
[4] Rec. Doc. 32; Rec. Doc. 34.
[5] Rec. Doc. 18.
[6] Rec. Doc. 1.
[7] Rec. Doc. 30.

61 south of LA-64 in East Baton Rouge Parish, Louisiana.[8] Trooper Cannon signaled for the vehicle, which displayed a Texas license plate, to stop on the side of the highway.[9] As seen in dash camera footage of the traffic stop, Cummings exited the vehicle and began conversing with the Trooper.[10] He denied having any form of identification on his person and stated that the Dodge Charger belonged to his girlfriend.[11]

When asked for details on his identity, Cummings repeatedly gave inaccurate spellings of his name, a false date of birth, and a false Social Security Number. Both the Trooper and LSP dispatch ran the various versions of this information in their computer systems but were unable to confirm Cummings' identify.[12] In footage captured by Trooper Cannon's body camera, Cummings is seen making numerous phone calls in a purported attempt to gather documentation proving he was not being deceitful.[13] After approximately thirty minutes, Cummings was advised of his rights per *Miranda*, detained, handcuffed, and searched for weapons.[14]

Once placed in the rear of Trooper Cannon's patrol vehicle, Cummings revealed the correct spelling of his name.[15] A search using the proper credentials revealed an active felony warrant for his arrest for Felon in Possession of a Firearm from the East Baton Rouge Sheriff's Office.[16] Upon this discovery, Trooper Cannon relayed to a second LSP officer on the scene, Trooper Derrick Parish, that Cummings "has been saying the whole time that '[the Dodge Charger] is my girl's car so I don't know what's in there.' So

---

[8] Rec. Doc. 20, p. 1.
[9] Rec. Doc. 31, p. 9–10.
[10] *See* Rec. Doc. 33, Gov. Exhibit 1-a.
[11] Rec. Doc. 31, p. 11–12.
[12] *See* Rec. Doc. 33, Gov. Exhibit 2-a – 2-f.
[13] *Id.*
[14] *See* Rec. Doc. 33, Gov. Exhibit 2-f.
[15] Rec. Doc. 33, Gov. Exhibit 2-g at 15:00.
[16] Rec. Doc. 33, Gov. Exhibit 2-h at 15:14.

he knows he got something in there."[17] Trooper Cannon then remarked that he would be confirming what was in the vehicle, and Cummings protested a search.[18] In response, Trooper Cannon stated the vehicle would have to be towed, thus an inventory search must be performed.[19]

As the LSP Troopers searched the vehicle, they noted items to include in the inventory before Trooper Parish kneeled down and located a firearm under the driver's seat of the Dodge Charger.[20] As the search of the vehicle continued, Trooper Parish asked Trooper Cannon if he would like to contact the registered owner of the vehicle or have it towed.[21] Believing the registered owner would either be unwilling or unable to drive to the scene, Trooper Cannon stated the vehicle should be towed.[22] Thereafter, a tow truck was called to retrieve the vehicle and a written inventory of its contents was created.[23]

Cummings now moves to suppress evidence of the firearm found in the vehicle.[24] He introduced LSP's Vehicle Tow Policy into evidence at the hearing and claims Trooper Cannon failed to follow the policy's provisions when inventorying the vehicle.[25] He argues that the firearm was discovered pursuant to an improper inventory search and is therefore the product of an illegal search and seizure. The Government opposes the *Motion*.[26]

---

[17] Rec. Doc. 33, Gov. Exhibit 2-h at 15:14.
[18] Rec. Doc. 33, Gov. Exhibit 2-h at 15:15.
[19] Rec. Doc. 33, Gov. Exhibit 2-I at 15:15.
[20] Rec. Doc. 33, Def. Exhibit 5 at 15:17.
[21] Rec. Doc. 31, p. 45, lines 12-25.
[22] Rec. Doc. 33, Gov. Exhibit 2-j at 15:22; Def. Exhibit 6 at 15:21; *See* Rec. Doc. 31, p. 42-47.
[23] Rec. Doc. 33, Def. Exhibit 2.
[24] Rec. Doc. 18; Rec. Doc. 34.
[25] Rec. Doc. 33, Def. Exhibit 1.
[26] Rec. Doc. 20; Rec. Doc. 32.

## II.     LAW AND ANALYSIS

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights."[27] However, "there are several situations where the burden shifts to the government," including where a defendant shows he was subject to a search without a warrant.[28] Because it is undisputed that Cummings was subject to a warrantless search, the Government bears the burden of proving the legality of the search by a preponderance of the evidence.

Warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless they fall within a few narrowly defined exceptions.[29] The Government forgoes arguing that the search of the Dodge Charger was justified on the exceptions of probable cause or as incident to arrest. Rather, it claims the search was valid as an "inventory search" and/or pursuant to the "inevitable discovery" doctrine.

### A. Inventory Search

Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment.[30] "An inventory search is reasonable and, thus, not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (i) protecting the property of the vehicle's owner, (ii) protecting the police against claims or disputes over lost or stolen property, and (iii) protecting the police from danger."[31] The Supreme Court has expressed that inventory searches must be

---

[27] *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014).
[28] *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977); *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).
[29] *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993).
[30] *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).
[31] *United States v. Hope*, 102 F.3d 114, 116 (5th Cir.1996); *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012).

conducted in accordance with standardized procedures "in order to limit police discretion and reduce the danger that inventory searches will become a disguise for warrantless evidentiary searches."[32]

Cummings claims that Trooper Cannon failed to follow the standardized procedure set forth in LSP's Vehicle Storage Policy and used an "inventory search" of the Dodge Charger as a ruse to conduct a warrantless search in violation of the Fourth Amendment. He claims the Trooper's disregard for the procedure is evidenced by his statements that he was going to "confirm" what Cummings was hiding in the vehicle by conducting an inventory search.

The Government rebuts Cummings' argument by quoting the Fifth Circuit in stating, "the subjective motivations of police are deemed irrelevant as long as their conduct does not exceed what they are objectively authorized to do."[33] "[T]he mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search."[34]

### i.    Application of LSP's Policy

"For a search to fall within the inventory search exception, it must be performed according to standard regulations and procedures, consistent with the proper purpose of a noninvestigative inventory search."[35] LSP's Vehicle Storage Policy states in relevant part:

---

[32] *United States v. Hahn*, 922 F.2d 243, 247 (5th Cir.1991) (citing *Florida v. Wells*, 110 S.Ct. 1632, 1637(1990)).
[33] *United States v. Bams*, 858 F.3d 937, 943 (5th Cir. 2017).
[34] Rec. Doc. 32, p. 3 (quoting *United States v. Zelinger*, 2015 WL 4256463, at *3 (S.D. Tex. July 14, 2015)). *See also Whren v. United States*, 517 U.S. 806, 811 (1996) (addressing officers' subjective intent and indicating exemption from the general Fourth Amendment requirements of probable cause and a warrant for inventory or administrative searches "is not accorded to searches that are *not* made for those purposes.").
[35] *United States v. Privett*, 68 F.3d 101, 103 (5th Cir.1995).

3. STORAGE OF VEHICLES WHEN OPERATOR IS ARRESTED
    i. When a subject is placed under physical arrest, the officer shall provide for the safety of the vehicle as follows:

    a) In the event the vehicle is a traffic hazard, the officer shall move it off the paved or main travel portion of the highway to a safe location per LRS 32:142. After the vehicle is parked, the available options are:

       1) Officers shall afford the violator the opportunity to sign a Vehicle Storage Record requesting his vehicle be left locked and parked in a safe location. If the arrestee is unable to provide a signature, officers shall indicate on the Vehicle Storage Record that verbal consent was given and the reason the operator is unable to sign. In no case shall a vehicle be parked on the shoulder or the side of a road. Violators shall be furnished a copy of the Vehicle Storage Record. The location, description and conditions of the vehicle shall be entered into the Troop desk log.

       2) If the violator does not wish to leave his vehicle as provided in this order, the officer may allow either a properly licensed and capable passenger or other person who can reach the scene within a reasonable time to drive the vehicle from the scene. The arrestee must sign the Vehicle Storage Record to authorize this option. If the arrestee is unable to provide a signature, officers shall indicate on the Vehicle Storage Record that verbal consent was given and the reason the operator is unable to sign. If this option is used, the Troop desk is to be notified and given the name of the authorized driver and license number for the Troop desk log.
                . . .
    c) When no alternate driver is available and the violator does not want his vehicle parked, the officer shall request a wrecker to store the vehicle, allowing the violator to request a wrecker that is in compliance with applicable laws and policies.[36]
                . . .

8. PROCESSING VEHICLE STORAGE REPORT
                . . .
    ii. Officers shall inventory or obtain a signature of inventory refusal on all vehicles requiring storage.

       a) A vehicle shall be inventoried only after a tow truck has been summoned or subsequent to the execution of a consensual search or legal search warrant.

---

[36] Rec. Doc. 33, Def. Exhibit 1.

> b) The scope of an inventory shall be consistent with the objective of collecting, documenting and safeguarding the defendant's property.[37]

Cummings claims Trooper Cannon violated Part 3(i)(a)(1)-(2) of the policy by failing to provide Cummings with the options of having the vehicle "locked and parked" or picked up by a person who could "reach the scene within a reasonable time." He notes that Trooper Cannon was given the name of the registered owner of the vehicle, yet he made no attempt to contact her before deciding to tow the vehicle. Further, Cummings claims he was not allowed to select the tow company to store the vehicle in violation of policy provision 3(i)(c).

Cummings claims Trooper Cannon violated Part 8 of the policy by not informing him that he could refuse an inventory search. The evidence shows Cummings nonetheless objected to a search, and Trooper Cannon responded by telling Cummings he could take his objections up in court.[38] Finally, Cummings claims the vehicle was searched prior to the summoning of the tow truck in direct violation of policy provision 8(ii)(a).

The Court finds that the evidence, including Trooper Cannon's live testimony, confirms he did not adhere to LSP's policy when searching the vehicle.[39] However, the Government argues that Trooper Cannon was not bound to follow the standardized policy of the LSP in an "all or nothing fashion" because the circumstances surrounding the traffic stop were "anything but standard."[40] Therefore, the Court will consider the

---

[37] Rec. Doc. 33, Def. Exhibit 1.
[38] Rec. Doc. 31, p. 43, lines 21-25.
[39] *See* Rec Doc. 31, p. 23, lines 2-10; p. 39; p. 42-47.
[40] Rec. Doc. 32, p. 2.

Government's argument that Trooper Cannon's actions were reasonable enough under the circumstances to satisfy the inventory search exception to the warrant requirement.

### ii.  *Circumstances of the Search*

Emphasizing that "the touchstone of the Fourth Amendment is reasonableness," the Government claims that it would be unreasonable for Trooper Cannon to fully comply with LSP's policy, especially "after being lied to for forty minutes on the side of the highway in a narrow shouldered construction zone."[41] The Government also argues that Cummings dispossessed himself of the vehicle when he told the Trooper, "that's my girl's car. I don't know what's in there."[42] In sum, the Government claims, "The defendant's own actions and circumstances of the stop reasonably justify the actions of Trooper Cannon."[43]

The Court finds the Government's arguments against suppression unpersuasive. "The Supreme Court has indicated that one of the most important factors making inventory searches reasonable is adherence to standard police procedures."[44] While "there is no reason to insist that [inventory searches] be conducted in a totally mechanical all or nothing fashion," a search must be sufficiently regulated to satisfy the Fourth Amendment.[45] Individual officers should be prevented from having "so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'"[46]

---

[41] Rec. Doc. 32, p. 3-4.
[42] Rec. Doc. 32, p. 4;
[43] Rec. Doc. 32, p. 4.
[44] *United States v. Hahn*, 922 F.2d 243, 246 (5th Cir.1991).
[45] *Florida v. Wells*, 495 U.S. 1, 4–5 (1990).
[46] *Id.* at 1.

Regardless of Trooper Cannon testifying that he believed he was conducting a proper inventory search under the circumstances, "[i]t is beyond serious debate that the prosecution bears the burden of establishing that any evidence submitted, which resulted from an inventory search, was the result of a search conducted in accordance with *known, established* police procedures."[47] The Fifth Circuit has held that an officer's testimony regarding his belief that an inventory search was performed, without more, is insufficient to validate a warrantless search and subsequent discovery of a firearm in a vehicle.[48] At the pretrial suppression hearing in *United States v. Hope*, no testimony other than the officer's statement, "I believe the Memphis police did inventory the vehicle," was introduced to prove that officers were following police department guidelines for inventory searches.[49] The Fifth Circuit reversed convictions in *Hope* that were based upon evidence found during the improper inventory search and held such evidence is properly suppressed when "[t]he record is devoid of any evidence that standard inventory procedures were in place and were, in fact, followed."[50]

In *U.S. v. Vernon*, the Fifth Circuit reversed the district court's denial of a motion to suppress evidence found during an inventory search of an impounded vehicle because a U.S. Marshal assisting in the search did not follow the USMS policy.[51] The Court disregarded the Government's argument that the U.S. Marshal was following the policy of the Tunica County sheriffs, who he was assisting at the time of the search. The U.S. Marshal's failure to follow the policy of the USMS alone warranted suppression.[52]

---

[47] *United States v. Hope*, 102 F.3d 114, 116 (5th Cir.1996) (emphasis added).
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *United States v. Vernon*, 511 Fed.Appx. 318, 323 (5th Cir. 2013).
[52] *Id.*

The Fifth Circuit reversed the district court's ruling in *U.S. v. Hahn* for similar reasons.[53] The search at issue in *Hahn* actually complied with a local police policy; however, the IRS agents who conducted the search had no knowledge of the local police policy, the IRS had no policy of its own, and the local police played no role in the search. Accordingly, the Fifth Circuit concluded that the IRS search could not be justified as an inventory search.[54]

Applied here, the search of Cummings' vehicle cannot be justified as an inventory search in light of Trooper Cannon's admitted failure to follow LSP's policy. The Government's argument that a proper inventory search occurred under the circumstances is rebutted by the LSP policy itself, which, in any event, would require a tow truck to be summoned before the inventory search began.[55] Inventory searches represent "a delicately balanced exception to the general requirement for a warrant."[56] "[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."[57] The Court finds that the record is devoid of any evidence that standard inventory procedures were, in fact, followed. Accordingly, the inventory exception to the warrant requirement is inapplicable here.

### B. Inevitable-Discovery Doctrine

The inevitable-discovery doctrine is an exception to the Fourth Amendment's exclusionary rule for warrantless searches. It provides that physical evidence obtained

---

[53] *U.S. v. Hahn*, 922 F.2d 243, 246 (5th Cir. 1991).
[54] *Id.*
[55] Rec. Doc. 33, Def. Exhibit 1.
[56] *Hahn*, 922 F.2d at 246.
[57] *Id.*

without a warrant can be admitted into evidence if it would have inevitably been discovered by lawful means.[58] For the inevitable discovery exception to apply, the Government must demonstrate by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation.[59]

"The Fifth Circuit often applies the inevitable discovery doctrine in cases where evidence is obtained without a warrant from a vehicle that was about to be subjected to an inventory search."[60] Such was the case in *U.S. v. Walker*, where the Fifth Circuit affirmed that the inevitable-discovery doctrine applied to a firearm and cell phone recovered from an arrestee's vehicle.[61] The defendant in *Walker* received an opportunity to contact his girlfriend to retrieve the vehicle following his arrest, but she did not arrive until after the vehicle was connected to a tow truck. An inventory search ensued, and the items sought to be suppressed were discovered. At the hearing on the defendant's motion to suppress, the arresting officer testified that once the defendant had been arrested, the policy of the Houston Police Department would have required him to conduct an inventory search even if the girlfriend had arrived earlier to pick up the car.[62] Affirming the district court's ruling denying the motion to suppress, the Fifth Circuit concluded that the firearm and cell phone would have inevitably been discovered whether the vehicle was towed or driven away by a third party, as both options required officers to inventory the vehicle.[63]

---

[58] *United States v. Walker*, 2021 WL 951665, at *3 (S.D. Tex. Mar. 12, 2021), *aff'd*, 49 F.4th 903 (5th Cir. 2022).
[59] *United States v. Ochoa*, 667 F.3d 643, 650 (5th Cir. 2012).
[60] *Walker*, 2021 WL 951665, at *13.
[61] *United States v. Walker*, 49 F.4th 903 (5th Cir. 2022).
[62] *Walker*, 2021 WL 951665, at *3 (S.D. Tex. Mar. 12, 2021), aff'd, 49 F.4th 903 (5th Cir. 2022)
[63] *United States v. Walker*, 49 F.4th 903, 910 (5th Cir. 2022).

Here, unlike in *Walker*, there is no officer testimony or evidence in the record showing that an inventory search was required per LSP policy. Cummings was not given the option of having the vehicle parked in a safe location or of contacting a third party to retrieve it—options that would not require an inventory search. "For the inevitable discovery exception to apply, the alternate means of obtaining the evidence must at least be in existence and, at least to some degree, imminent, if yet unrealized."[64]

It cannot be said from a review of the body camera footage that the firearm, which was located under the driver's seat of the vehicle, would have been located without an inventory search of the vehicle.[65] And, based on the available alternative methods of securing the vehicle, it cannot be said that an inventory search of the vehicle was imminent. Accordingly, the Government has not met its burden of proving the inevitable discovery exception applies. The *Motion to Suppress* is granted.

## III.   CONCLUSION

For the reasons set forth above, the Defendant's *Motion to Suppress and Evidence*[66] is GRANTED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 14th day of June, 2023.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[64] *United States v. Zavala*, 541 F.3d 562, 580 (5th Cir.2008) (internal quotations omitted).
[65] *See* Rec. Doc. 33, Gov. Exhibit 2-I at 15:18; Def. Exhibit 5 at 15:17–18. Car keys can be seen on the floor of the vehicle behind the driver's seat, but the gun, which the officers repeatedly state is under the driver's seat, is not clearly visible.
[66] Rec. Doc. No. 18.